**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
        jweedman@whitecase.com
        lucas.curtis@whitecase.com
        nikita.ash@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
        devin.rivero@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
        laura.baccash@whitecase.com

*Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | § § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § § § | (Jointly Administered) |

---

[1] The "**Post-Effective Date Debtors**" and, prior to the effective date, the "**Debtors**," in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| | | |
|---|---|---|
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS, | § § § § § | Adv. Proc. No. 25-01027 |
| Plaintiff, | § § | |
| v. | § § | |
| STEVEN CALANDRA, | § § | |
| Defendant. | § § | |

## NOTICE OF PLAINTIFF MOHSIN Y. MEGHJI'S MOTION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 7055, DIRECTING THE ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT STEVEN CALANDRA

**PLEASE TAKE NOTICE** that Mohsin Y. Meghji ("**Plaintiff**" or the "**Litigation Administrator**"), as a representative of Celsius Network LLC and its affiliated Post-Effective Date Debtors (together with their non-Post-Effective Date Debtor affiliates, "**Celsius**" or the "**Company**"), by and through his undersigned counsel, hereby files a *Motion for an Order, Pursuant to Fed. R. Bankr. P. 7055, Directing the Entry of a Default Judgment Against Defendant Steven Calandra* (the "**Motion**").

Dated: June 17, 2025
     New York, New York

By: */s/ Samuel P. Hershey*

**WHITE & CASE LLP**
Samuel P. Hershey
Lucas Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com
       lucas.curtis@whitecase.com
       nikita.ash@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
          laura.baccash@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  kwofford@whitecase.com
          devin.rivero@whitecase.com


*Counsel to Mohsin Y. Meghji,
Litigation Administrator, as
Representative for the Post-Effective
Date Debtors*

**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
       jweedman@whitecase.com
       lucas.curtis@whitecase.com
       nikita.ash@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
       devin.rivero@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
       laura.baccash@whitecase.com

*Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | § § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § § § | (Jointly Administered) |

---

[1] The "**Post-Effective Date Debtors**" and, prior to the effective date, the "**Debtors**," in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| | |
|---|---|
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN CALANDRA, <br><br> Defendant. | § § § § § § § § § § § § § § |

Adv. Proc. No. 25-01027

**PLAINTIFF MOHSIN Y. MEGHJI'S MOTION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 7055, DIRECTING THE ENTRY OF A DEFAULT JUDGMENT AGAINST DEFENDANT STEVEN CALANDRA**

Mohsin Y. Meghji ("**Plaintiff**" or the "**Litigation Administrator**"), as a representative of Celsius Network LLC and its affiliated Post-Effective Date Debtors (together with their non-Post-Effective Date Debtor affiliates, "**Celsius**" or the "**Company**"), hereby submits this motion ("**Motion**") for entry of a default judgment against Default Defendant Steven Calandra ("**Default Defendant**") pursuant to Rule 55 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7055:

**PRELIMINARY STATEMENT**

1. On May 26, 2024, Default Defendant executed a Settlement Agreement with the Litigation Administrator to settle the Litigation Administrator's preference claims against Default Defendant. However, Default Defendant breached the Settlement Agreement by failing to render payment as agreed. The Litigation Administrator has made substantial efforts to communicate with Default Defendant regarding Default Defendant's breach of the Settlement Agreement, including through the channels of communication that were used to negotiate settlement, but Default Defendant has not responded. Accordingly, on January 31, 2025, the Litigation Administrator filed a breach of contract complaint against Default Defendant. Default Defendant

has not responded to the complaint and has now defaulted. Indeed, the Litigation Administrator has waited substantially longer than the statutory response time before filing this motion, and still Default Defendant has not responded. Accordingly, the Litigation Administrator seeks a default judgment against Default Defendant so that he can pursue compensation for the Debtors' estates in connection with Default Defendant's prepetition preferential transfers (which Default Defendant acknowledged but failed to settle) and costs in connection with bringing this litigation.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**" or the "**Court**") has exclusive jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and section 11 of the settlement agreement between Plaintiff and Default Defendant, executed on May 26, 2024 (the "**Settlement Agreement**"). *See* [Adv. Pro. No. 1-A].[2]

3. The Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157. This Court has jurisdiction to hear and to determine this proceeding and to enter a final order and judgment. In the event that this Court or any other court finds any part of the Adversary Proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 11 Cases and will have a material impact on the administration of the Estates.

4. Plaintiff consents to entry of final orders and judgments by this Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008. Plaintiff also consents to entry of final

---

[2] Docket entries identified as [Dkt. No. __] refer to the docket entries of *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y., filed July 13, 2022). Docket entries identified as [Adv. Pro. No. __] refer to docket entries in the above-captioned adversary proceeding. Documents filed on both dockets can be accessed free of charge at https://cases.stretto.com/celsius/.

orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5. This Court has jurisdiction over Default Defendant inasmuch as Default Defendant has maintained minimum contacts with the United States in connection with the claims asserted in this Complaint. This Court also has jurisdiction over Default Defendant pursuant to Bankruptcy Rules 7004(d) and (f) and New York Civil Practice Law & Rules § 302 (McKinney 2008) because Default Defendant purposefully availed itself of the laws of the United States and the State of New York by, among other things, doing or transacting business in the United States and in the State of New York, which gives rise and/or relates to the claims at issue in this Adversary Proceeding. Further, this Court also has jurisdiction over Default Defendant by virtue of Default Defendant having entered into agreements with the Debtors and/or Plaintiff that for various contracts and matters designated New York law as the governing law and New York as the forum state for dispute resolution with respect to the transactions at issue in this Adversary Proceeding. To the extent Default Defendant has also filed a proof of claim in these Chapter 11 Cases and is therefore subject to the Court's jurisdiction, Default Defendant's claim, if any, is hereby incorporated by reference.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises under and is related to the Debtors' Chapter 11 Cases pending in this Court. Moreover, by contract, the parties "agree[d] that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce th[e] Settlement Agreement." Settlement Agreement § 11.

## FACTUAL BACKGROUND

7.     On July 13, 2022 (the "**Petition Date**"), Celsius Network LLC and its affiliated debtors (collectively, the "**Debtors**")[3] each filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").[4]  All of these Chapter 11 Cases were consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).[5]  The Debtors were authorized to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

8.     Additional information regarding the facts and circumstances of the Chapter 11 Cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 23] and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 24].

9.     On November 9, 2023, the Court entered its *Findings of Fact, Conclusions of Law, and Order Signed on November 9, 2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* [Dkt. No. 3972] (the "**Confirmation Order**"), pursuant to which the Court approved and confirmed the Plan (defined below and as amended, supplemented, or modified from time to time) for all of the Debtors.

10.     On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtors Affiliates (Conformed for MiningCo Transaction)* [Dkt. No. 4289] (the "**Plan**").

---

[3] The "**Debtors**" are all entities listed in footnote 1.

[4] Other than GK8 UK Limited, and GK8 USA LLC, which filed on December 7, 2022.

[5] *See Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Dkt. No. 53]; *Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Dkt. No. 1648].

11. The effective date of the Plan (the "**Effective Date**") occurred on January 31, 2024.[6]

12. In accordance with the Plan and Confirmation Order, the Litigation Administrator was appointed as of the Effective Date of the Plan, and the Debtors and the Litigation Administrator entered into that certain *Litigation Administrator Agreement* (the "**Litigation Administrator Agreement**").[7]

13. Pursuant to the Plan, Confirmation Order, and the Litigation Administrator Agreement, Plaintiff is empowered to investigate, prosecute, compromise, and settle Recovery Causes of Action, including Avoidance Actions,[8] on behalf of the Debtors and their estates (the "**Estates**").

14. As laid out in more detail in the Complaint (defined below), on May 26, 2024, Default Defendant entered into the Settlement Agreement with the Litigation Administrator, wherein Default Defendant agreed to provide as consideration a settlement payment of $██████ to the Litigation Administrator (the "**Settlement Payment**"). *See* Compl. at ¶ 27. In exchange, the Litigation Administrator would settle all disputes against Default Defendant related to Default Defendant's preference exposure arising from the Debtors' transfers of assets to Default Defendant in the 90 days prior to the Debtors' bankruptcy filing (the "**Preference Exposure**"). *Id*. Default Defendant failed to deliver payment of the Settlement Payment to the Litigation Administrator by the deadline set forth in the Settlement Agreement of ███████████████████████, thus breaching the Settlement Agreement. *Id*. at ¶ 43. Defendant satisfied payment in part with a setoff

---

[6] *See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions* [Dkt. No. 4298].

[7] *See Eleventh Notice of Filing Plan Supplement*, Ex. B [Dkt. No. 4297].

[8] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Litigation Administrator Agreement, as applicable.

of $██████, which was effectuated by the Litigation Administrator, leaving $████████ outstanding, which the Defendant did not remit to the Litigation Administrator. *Id*. at ¶ 46.

15. On January 31, 2025, the Debtors filed the Complaint against Default Defendant, asserting one cause of action for breach of contract and one cause of action for attorney's fees and costs. *See* Complaint, *Mohsin Y. Meghji v. Steven Calandra*, Adv. Pro. No. 25-01027 (Jan. 31, 2025) (the "**Complaint**"). The Complaint seeks damages of $████████, equaling the outstanding amount owed under the Settlement Agreement, as well as pre- and post-judgment interests, attorney fees and costs, and any other relief as this Court deems just and proper.

16. On February 5, 2025, Default Defendant was properly served with the Complaint and *Summons and Notice of Pretrial Conference* [Adv. Pro. No. 2]. *See Certificate of Service* [Adv. Pro. No. 3]. The Certificate of Service was filed on the docket on February 10, 2025. *Id*.

17. As reflected above, the deadline for Default Defendant to respond to the Complaint passed months ago. Default Defendant has failed to appear in this action, respond to the Complaint or contact the Litigation Administrator to try to resolve the Complaint. Accordingly, on March 31, 2025, the Clerk of the Bankruptcy Court filed an entry of default against the Default Defendant [Dkt. No. 5] (the "**Certificate of Default**").

## RELIEF REQUESTED

18. Plaintiff respectfully requests that this Court enter default judgment against the Default Defendant as set forth herein, and grant such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

19. Pursuant to Rule 55 of the Federal Rules of Civil Procedure, made applicable by Rule 7055 of the Bankruptcy Code, a party may follow a "two-step process" first for the entry of a default and second the entry of a default judgment against a party that fails to defend itself. *City*

*of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id*. "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment." *Id*.

20. As set forth above, Default Defendant signed a Settlement Agreement but failed to deliver payment by the required deadline, which is now many months ago. Default Defendant has not responded to the Litigation Administrator's attempts to communicate (including using the same channels that were used to convey the Settlement Agreement), nor has Default Defendant responded to the Complaint by the statutory deadline, which has long passed. Accordingly, the Litigation Administrator seeks the entry of an order in substantially the same form as **Exhibit A** (the "**Default Judgment Order**"), pursuant to Bankruptcy Rule 7055(b)(2), granting Plaintiff a judgment by default against the Default Defendant, and immediate entry of a judgment against the Default Defendant.

21. In addition, the Litigation Administrator seeks pre-judgment interest from the date following the Default Defendant's breach of the Settlement Agreement at the rate of 9%. Courts regularly award 9% pre-judgment interest, under New York law, against defendants who have breached contracts governed by New York law. *See, e.g.*, *Milazzo v. Techakraisri (In re OLD DDUS, Inc.)*, 659 B.R. 810, 847–49 (Bankr. S.D.N.Y. 2024) (awarding pre-judgment interest at New York state 9% rate from date following breach where contract was governed by New York law); *Pharo Gaia Fund, Ltd. v. Petroleos de Venezuela, S.A.*, Case No. 1-23-cv-10071 (S.D.N.Y. Mar. 4, 2024), ECF No. 25 (granting pre-judgment interest at 9% rate from the date after each missed payment); *see also* N.Y. C.P.L.R. §§ 5001, 5004(a). The Default Defendant breached the Settlement Agreement on June 3, 2024.

22.      As required by Local Rule 7055-1, the Certificate of Default is attached as **Exhibit B** and the Complaint is attached as **Exhibit C**.[9]

## NOTICE

23.      Notice of this Motion and an opportunity for a hearing thereon shall be given to Default Defendant at the addresses listed in the Certificate of Service.  [Adv. Pro. No. 3].

## NO PRIOR RELIEF

24.      No prior application for the relief sought herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

---

[9] Service will be effectuated concurrently with the filing of this Motion, and a certificate of service will be filed immediately thereafter.

**WHEREFORE**, the Litigation Administrator respectfully requests that the Court enter an Order granting default and final judgment against the Default Defendant in the amount of $██████, pre-judgment interest computed at the New York state rate from the date of the breach of the Settlement Agreement, and post-judgment interested computed at the rate prescribed by 28 U.S.C. § 1961. The Litigation Administrator also requests that his right to seek additional damages, including attorney fees and costs, is hereby reserved and may be sought upon further motion to the Court.

Dated: June 17, 2025
       New York, New York

By: */s/ Samuel P. Hershey*

**WHITE & CASE LLP**
Samuel P. Hershey
Lucas Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com
       lucas.curtis@whitecase.com
       nikita.ash@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
       laura.baccash@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900

Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  kwofford@whitecase.com
         devin.rivero@whitecase.com


*Counsel to Mohsin Y. Meghji,
Litigation Administrator, as
Representative for the Post-Effective
Date Debtors*

# EXHIBIT A

**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
      jweedman@whitecase.com
      lucas.curtis@whitecase.com
      nikita.ash@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
      devin.rivero@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
      laura.baccash@whitecase.com

*Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | § § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § § § | (Jointly Administered) |

---

[1] The "**Post-Effective Date Debtors**" and, prior to the effective date, the "**Debtors**," in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

<table>
<tr><td>

MOHSIN Y. MEGHJI, LITIGATION
ADMINISTRATOR, AS REPRESENTATIVE
FOR THE POST-EFFECTIVE DATE
DEBTORS,

            Plaintiff,

v.

STEVEN CALANDRA,

            Defendant.

</td><td>

§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§

</td><td>

Adv. Proc. No.  25-01027

</td></tr>
</table>

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 7055, DIRECTING THE ENTRY OF A DEFAULT JUDGMENT AGAINST DEFENDANT STEVEN CALANDRA**

This matter coming before the Court on the motion (the "**Motion**") of Plaintiff Mohsin Y. Meghji, as Litigation Administrator for Celsius Network LLC and its affiliated Post-Effective Date Debtors ("**Plaintiff**" or the "**Litigation Administrator**"), for entry of a default judgment against Steven Calandra (the "**Default Defendant**"), and the Court having found that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (b) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this matter is a core proceeding under 28 U.S.C. § 157(b)(2); (d) due and proper notice of the Motion has been given and served upon the Default Defendant and no further or other notice is necessary; (e) service of the Motion was proper under Federal Rule of Civil Procedure 5 as made applicable by Bankruptcy Rule 7005; (f) the Default Defendant was served with copies of the Complaint and Summons at their address of record, and have failed to appear or otherwise respond to the Complaint; and (g) the Court having reviewed the Motion and its supporting materials and having determined that the legal and factual bases set forth in the Motion and supporting materials establish just cause for the relief granted herein:

IT IS HEREBY ORDERED THAT:

1. The Motion for entry of a default judgment is GRANTED.

2. Judgment is entered in favor of the Litigation Administrator and against Default Defendant Steven Calandra in the amount of $ ███████.

3. Plaintiff is entitled to an award of pre-judgment interest at the New York state rate of 9% per annum from ██████, through the date of judgment.

4. Plaintiff's right to seek additional damages, including attorney fees and costs, is hereby reserved and may be sought upon further motion to the Court.

5. Plaintiff is entitled to enforce this judgment through any and all available means, including but not limited to garnishment, attachment, execution, or other collection proceedings permitted under applicable law.

6. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.


Dated: _____, 2025
       New York, New York


                                        SO ORDERED:

                                        _____
                                        MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE


3

# **<u>EXHIBIT B</u>**

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

In re: Celsius Network LLC

Bankruptcy Case No.:
22−10964−mg

Mohsin Y. Meghji, Litigation Administrator, As Representative for the Post−Effective Date Debtors

Plaintiff(s),

−against−

Adversary Proceeding No.
25−01027−mg

STEVEN CALANDRA

Defendant(s)

### ENTRY OF DEFAULT

It appears from the record that the following defendant failed to plead or otherwise defend in this case as required by law.

| Name: | STEVEN CALANDRA |
|-------|-----------------|

Therefore, default is entered against the defendant as authorized by Bankruptcy Rule 7055.

Dated: 3/31/25

Vito Genna
_____
*Clerk of the Court*

By: /s/ Mary Lopez
_____
*Deputy Clerk*

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0208−1 | User: admin | Date Created: 3/31/2025 |
| Case: 25−01027−mg | Form ID: clkdflt | Total: 1 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

dft          STEVEN CALANDRA

TOTAL: 1

# **EXHIBIT C**

**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
       jweedman@whitecase.com
       lucas.curtis@whitecase.com
       nikita.ash@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
       devin.rivero@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
       laura.baccash@whitecase.com

*Co-Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | § § § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § § § | (Jointly Administered) |

---

[1] The "**Post-Effective Date Debtors**" and, prior to the effective date, the "**Debtors**," in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| | |
|---|---|
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN CALANDRA,<br><br>Defendant. | §<br>§<br>§   Adv. Proc. No.  25-_____<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## COMPLAINT

Mohsin Y. Meghji ("**Plaintiff**" or the "**Litigation Administrator**"), as a representative of Celsius Network LLC and its affiliated Post-Effective Date Debtors (together with their non-Post-Effective Date Debtor affiliates, "**Celsius**" or the "**Company**"), hereby submits this complaint (the "**Complaint**") through his undersigned counsel to enforce the settlement agreement between the Litigation Administrator and the above-captioned defendant (the "**Defendant**") and recover related damages.

## NATURE OF ACTION[2]

1.      This Complaint arises from Defendant's breach of the obligations under a settlement agreement between Plaintiff and Defendant, executed May 26, 2024 (the "**Settlement Agreement**"), to settle Defendant's preference exposure arising from the Debtors' transfers of assets to Defendant in the 90 days prior to the Debtors' bankruptcy filing (the "**Preference**

---

[2] Pursuant to the Court's *Order Authorizing the Litigation Administrator to Redact and File Under Seal Certain Confidential Terms of Customer Preference Claims Settlement Agreements Against Certain Breaching Parties* [Docket No. 7779] (the "**Confidential Terms Sealing Order**"), the Litigation Administrator has redacted confidential terms in the Complaint and Settlement Agreement and has filed the confidential terms under seal. *See* Confidential Terms Sealing Order ¶ 6.

2

**Exposure").**[3]  The Settlement Agreement constituted a valid contract, which Defendant accepted upon signing.  In exchange for the resolution of Defendant's Preference Exposure, Defendant agreed to pay by ████████ (the "**Payment Deadline**") a settlement payment of ████████ (the "**Settlement Payment**"), which is substantially less than the amount of Defendant's Preference Exposure.  The Defendant failed to make the required payment by the Payment Deadline, constituting a breach of contract.  As of the date of this filing, over eight months have passed since Defendant missed the Payment Deadline to which Defendant agreed.

2.      This Complaint is a last resort.  Plaintiff has made numerous attempts to contact Defendant using the same channels of communication that were used to negotiate and transmit the Settlement Agreement.  Despite Plaintiff's efforts, Defendant still has not made the full Settlement Payment.  Additionally, upon Plaintiff's motion, on October 29, 2024, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**" or the "**Court**") entered an order enforcing the Settlement Agreement against Defendant and other breaching parties (the "**Settlement Enforcement Order**").[4]  In the Settlement Enforcement Order (to which Defendant did not object and which is now final and unappealable), the Bankruptcy Court held that the Settlement Agreement constituted a valid and enforceable contract and that the breaching parties, including Defendant, breached the Settlement Agreement by failing to remit the Settlement Payment by the designated Payment Deadline.  The Settlement Enforcement Order gave Defendant one last chance to fulfill the outstanding Settlement Payment by November 29, 2024.  Defendant still has not remitted payment.

---

[3] The Settlement Agreement is attached as Exhibit A to the Complaint.  Plaintiff's calculation of Defendant's Preference Exposure was conducted exclusively for the purposes of the Settlement Agreement. In the context of litigation, however, the value of the Preference Exposure would be significantly greater.

[4] *See Order Granting Litigation Administrator's Motion to Enforce Customer Preference Claims Settlement Agreements Against Certain Breaching Parties* [Docket No. 7778].

3.     The Litigation Administrator seeks to recover damages resulting from Defendant's breach of the Settlement Agreement and failure to remit the Settlement Payment.  In addition, the Litigation Administrator seeks reimbursement of attorneys' fees incurred in enforcing the Settlement Agreement, along with pre-judgment interest to compensate for the time-value of the damages suffered. These remedies are necessary to ensure that Defendant is held accountable and that the Settlement Agreement to which Defendant voluntarily consented is fully enforced in accordance with its terms and with the terms of this Court's Settlement Enforcement Order.

## THE PARTIES

4.     The Litigation Administrator brings this adversary proceeding (the "**Adversary Proceeding**") pursuant to the *Findings of Fact, Conclusions of Law, and Order Signed on November 9, 2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "**Confirmation Order**") [Docket No. 3972],[5] the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), the Litigation Administrator Agreement attached as Exhibit B to the *Eleventh Notice of Filing of Plan Supplement* [Docket No. 4297] (the "**Litigation Administrator Agreement**"), and section 1123 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").  Pursuant to the Plan, Confirmation Order, and the Litigation Administrator Agreement, Plaintiff has the capacity, in his own right and name, to investigate, prosecute, compromise, and settle Recovery Causes of Action,[6] including this

---

[5] "Docket No." refers to the docket of *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y., filed July 13, 2022).  Documents filed on this docket can be accessed free of charge at https://cases.stretto.com/celsius/.

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Litigation Administrator Agreement, as applicable.

Adversary Proceeding and the underlying Avoidance Action, on behalf of the Debtors and their estates (the "**Estates**").

5. Upon information and belief, Defendant was, at all relevant times, a Celsius customer using the Celsius platform for the storage, transfer, purchase, and/or withdrawal of assets.

6. Upon further information and belief, Defendant resides at an address within the United States, which is known to Plaintiff but is not publicly disclosed pursuant to the *Memorandum Opinion and Order on the Debtors' Sealing Motion* [Docket No. 910] (the "**Order to Seal**").

## JURISDICTION AND VENUE

7. The Court has exclusive jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and section 11 of the Settlement Agreement, dated May 26, 2024.

8. The Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157. This Court has jurisdiction to hear and determine this proceeding and to enter a final order and judgment. In the event that this Court or any other court finds any part of the Adversary Proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 11 Cases and will have a material impact on the administration of the Estates.

9. Plaintiff consents to entry of final orders and judgments by this Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008. Plaintiff also consents to entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10. This Court has jurisdiction over Defendant inasmuch as Defendant has maintained minimum contacts with the United States in connection with the claims asserted in this Complaint. This Court also has jurisdiction over Defendant pursuant to Bankruptcy Rules 7004(d) and (f) and New York Civil Practice Law & Rules § 302 (McKinney 2008) because Defendant purposefully

5

availed themselves of the laws of the United States and the State of New York by, among other things, doing or transacting business in the United States and in the State of New York, which gives rise or relates to the claims at issue in this Adversary Proceeding. Further, this Court also has jurisdiction over Defendant by virtue of Defendant having entered into the Settlement Agreement that designated New York law as the governing law and New York as the forum state for dispute resolution with respect to the Settlement Agreement at issue in this Adversary Proceeding. Settlement Agreement § 11. This Court also has exclusive jurisdiction over this matter pursuant to the Settlement Enforcement Order.

11. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises under and is related to the Debtors' Chapter 11 Cases pending in this Court. Moreover, by contract, the parties "agree[d] that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce th[e] Settlement Agreement." Settlement Agreement § 11.

## FACTUAL BACKGROUND

### A. Celsius's Founding and Collapse in May 2022

12. Celsius was founded in 2017. The business idea was described in a whitepaper, which Celsius used to solicit capital through the public initial coin offering of its own cryptocurrency, CEL token. Celsius planned to offer two primary products. Customers could transfer their cryptocurrency assets to Celsius in exchange for weekly interest. Celsius said it would lend those cryptocurrency assets to hedge funds, family offices, and crypto funds to generate yield. Celsius account holders could elect to receive weekly rewards payments (or interest) either in the deposited cryptocurrency (*i.e.*, in-kind) or in CEL token, which had higher return interest rates. In short, customers would deposit digital assets onto the Celsius platform. Celsius would lend the coins to third parties to earn yield. Celsius represented to customers that they could withdraw assets

6

corresponding to the balances in their Celsius accounts at will or transfer them between accounts at Celsius as needed.

13.    However, these representations were untrue.  As early as March 2022, Celsius acknowledged internally that it was not producing enough revenue to cover liabilities or additional operating expenses.  By its own account, Celsius was insolvent by nearly $800 million.  Accordingly, Celsius was unable to return assets to customers when requested.  Rather, the assets that customers withdrew depleted a pool of assets that was insufficient for Celsius to honor customers' withdrawal requests.  Celsius's model was a fraud, with the Company promising it could, and would, pay its customers back when it knew it could not.

14.    While Celsius was already insolvent at least as of March 2022, the situation at the Company became even more untenable.  On May 7, 2022, a combination of regulatory pressure and the loss of value of the cryptocurrency token TerraUSD ("**UST**") which de-stabilized the entire cryptocurrency market, created a perfect storm.  As the UST coin's value plummeted (the "**Terra Luna Collapse**"), rumors swirled around Celsius and its stability because Celsius had approximately $940 million deployed on the Terra blockchain.  Customers withdrew billions of dollars' worth of cryptocurrency assets from the Celsius platform the week after the Terra Luna Collapse.  In all, 75% percent of withdrawals during the Preference Period occurred after the Terra Luna Collapse.

15.    Internally, Celsius faced a liquidity crisis.  It had billions of dollars invested in illiquid investments and insufficient assets to address customer withdrawal requests.  Celsius also had more than one billion dollars in loans that were collateralized by cryptocurrency that was dramatically decreasing in value and required additional collateral to survive margin calls.  By May 16, 2022, Celsius's liquidity had dropped by 40% due to customer withdrawals and steep price declines in bitcoin ("**BTC**") and Ethereum ("**ETH**").

7

16. Over the course of May and June 2022, cryptocurrency prices widely and continuously plummeted, and the instability in the cryptocurrency markets led to a run on the bank. Many customers began rapidly withdrawing all or some of their assets, demanding cryptocurrency assets that Celsius lacked liquidity to provide.

17. On June 12, 2022, in response to customer withdrawal demands and increasing volatility in the cryptocurrency markets, Celsius paused all withdrawals from its platform to prevent further erosion of value. Hundreds of thousands of customers who still had assets on Celsius's platform were left without recourse, unable to withdraw or sell their coins. In some cases, a matter of minutes made the difference between being a customer who was able to escape with assets and a customer who had assets frozen indefinitely while the value continued to plummet.

**B.    The Chapter 11 Cases**

18. On the Petition Date, the Debtors, other than GK8 Ltd, GK8 UK Limited, and GK8 USA LLC (collectively, the "**GK8 Debtors**"), filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code. On December 7, 2022, the GK8 Debtors filed voluntary petitions in this Court under chapter 11 of the Bankruptcy Code. All of these Chapter 11 Cases were consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).[7]

19. On July 27, 2022, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.[8] On September 29, 2022, the Court entered an order directing the appointment of an

---

[7] *See Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 53]; *Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 1648].

[8] *Id.*

8

examiner.[9] Following the examiner's issuance of a final report of her examination, on April 4, 2023, the Court entered an order discharging the examiner.[10]

20.     On November 9, 2023, the Court entered the Confirmation Order, pursuant to which the Court approved and confirmed the Plan (as amended, supplemented, or modified from time to time) for all of the Debtors. The Confirmation Order provides that Cryptocurrency held by Debtors as of the Petition Date as collateral with respect to Account Holders' loan obligations under the Borrow Program constitutes property of the Estates under section 541 of the Bankruptcy Code.[11]

21.     Pursuant to the Confirmation Order and Plan, Debtors Celsius Network Limited, Celsius Network LLC, Celsius Lending LLC, and Celsius Networks Lending LLC (the "**Consolidated Debtors**") were substantively consolidated for purposes of the Plan, including for purposes of voting, confirmation, and Plan distributions. Among other aspects of the substantive consolidation, (i) all assets and all liabilities of the Consolidated Debtors shall be treated as though they were merged; (ii) all joint obligations of two or more Consolidated Debtors and multiple Claims against such Consolidated Debtors on account of such joint obligations shall be treated and allowed as a single Claim against the Consolidated Debtors; and (iii) each Claim filed or scheduled in the Chapter 11 Case of any Consolidated Debtor shall be deemed filed against the Consolidated Debtors and a single obligation of the estates of the Consolidated Debtors.[12]

22.     As described in articles III.A.1 and III.B.9 of the Plan and article III.E of the Disclosure Statement, General Unsecured Claims constitute an impaired class of creditors that has not been, and is not expected to be, paid in full.

---

[9] *See Order Approving the Appointment of Chapter 11 Examiner* [Docket No. 923].

[10] *See Order Discharging Examiner* [Docket No. 2364].

[11] *See* Confirmation Order ¶¶ 33-36, 269.

[12] *See* Plan, Art. IV.A.

23.     On January 31, 2024, the Plan became effective.[13]   As part of the Plan, the Litigation Administrator was appointed to prosecute, settle, or otherwise resolve any claims belonging to the Estates and to serve as the Estates' representative in certain litigation, including causes of action under chapter 5 of the Bankruptcy Code.[14]   The Litigation Administrator is charged with maximizing distributions to the stakeholders, including victims of Celsius's collapse.

### C.     Defendant's Breach of the Settlement Agreement

24.     Defendant contributed to the "run on the bank" by making significant withdrawals from the Celsius platform during the Preference Period.  These withdrawals constitute Defendant's Preference Exposure.  The Litigation Administrator sent Defendant a settlement offer via email (the "**Settlement Offer**") providing Defendant with the opportunity to resolve Defendant's Preference Exposure.

25.     On May 26, 2024, Defendant acknowledged and accepted the Settlement Offer by returning a signed version of the Settlement Agreement to the Litigation Administrator.

26.     By signing the Settlement Agreement, Defendant accepted the Settlement Agreement's terms and recitals.

27.     The Settlement Agreement stated that, for purposes of the Settlement Agreement, Defendant's Preference Exposure amounted to ███████, which is substantially less than the amount the Litigation Administrator would pursue in litigation.  By signing the Settlement Agreement, Defendant agreed to provide as consideration a Settlement Payment of ███████ to the Litigation Administrator.  In exchange, the Litigation Administrator would settle all disputes against Defendant related to Defendant's Preference Exposure.

---

[13] *See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions* [Docket No. 4298].

[14] *See* Plan, Art. IV.L.

28. In the event of non-payment by Defendant, the Settlement Agreement provided that the Litigation Administrator would be entitled to enforce the terms of the Settlement Agreement through legal action, or terminate the Settlement Agreement and void any releases contained therein with respect to Defendant. Settlement Agreement § 6. Additionally, the Litigation Administrator would be entitled to reinstitute any avoidance actions previously released, recover all attorney's fees, and exercise all available rights and remedies under applicable law. Settlement Agreement §§ 6, 7.

29. By signing the Settlement Agreement, Defendant agreed to remit the Settlement Payment Amount to the Litigation Administrator by the Payment Deadline of ███████████████ ████████████████ after the date on which Defendant signed the Settlement Agreement.

30. Defendant failed to remit payment to the Litigation Administrator by the Payment Deadline.

31. The Litigation Administrator has repeatedly informed Defendant—by the same channels of communication that were used to communicate about and execute the Settlement Agreement—that Defendant is in breach of the Settlement Agreement due to Defendant's failure to make the Settlement Payment by the Settlement Deadline. Despite these notifications, Defendant has failed to fulfill the obligations under the Settlement Agreement.

**D.      The Settlement Enforcement Order**

32. On September 24, 2024, the Litigation Administrator filed the *Litigation Administrator's Motion to Enforce Customer Preference Claims Settlement Agreements Against Certain Breaching Parties* [Docket No. 7709] (the "**Settlement Enforcement Motion**"). Defendant received notice of the Settlement Enforcement Motion and did not object. On October 29, 2024, the Bankruptcy Court entered the Settlement Enforcement Order, enforcing the

Settlement Agreement against certain breaching parties, including Defendant.  The Settlement Enforcement Order is now final and non-appealable.

33.     Through the Settlement Enforcement Order, the Bankruptcy Court held that the Settlement Agreement constituted a valid and enforceable contract, and that the Defendant had breached the Settlement Agreement by failing to remit payment by the designated Payment Deadline.  Settlement Enforcement Order at ¶ 2.

34.     Under the Settlement Enforcement Order, Defendant was required to fulfill the outstanding Settlement Payment by November 29, 2024. *Id*.

35.     On October 30, 2024, the Litigation Administrator served the Settlement Enforcement Order on Defendant by email and regular mail.  The email and mailing address were the same as previously used by the Litigation Administrator to communicate with Defendant, including regarding the Settlement Agreement.

36.     Defendant failed to remit the Settlement Payment amount by the deadline set forth in the Settlement Enforcement Order.  Nor has Defendant remedied this failure in the months that have followed.

## CAUSES OF ACTION

### COUNT ONE

**(Breach of Contract — Defendant)**

37.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

38.     The Settlement Agreement entered into by Defendant constituted a valid and binding contract between the Litigation Administrator and Defendant.

39.     The Settlement Offer sent by the Litigation Administrator to Defendant via email constituted a valid offer to enter into a contract.

12

40. The Settlement Agreement executed by Defendant on May 26, 2024 constituted a valid and enforceable contract. Defendant's returned and signed version of the Settlement Agreement constituted an acceptance of the Settlement Offer and demonstrated Defendant's intent to be bound by the Settlement Agreement.

41. By signing the Settlement Agreement, Defendant agreed to pay the Settlement Payment Amount of ████████ before ████████████████████████████. In exchange, the Litigation Administrator agreed to the resolution of Defendant's liability on account of Defendant's Preference Exposure. This mutual exchange of value constituted valid consideration under the Settlement Agreement.

42. The Litigation Administrator was ready, willing, and able to resolve Defendant's liability on account of Defendant's Preference Exposure in exchange for timely payment of the Settlement Payment Amount of ████████ as agreed in the Settlement Agreement.

43. Defendant failed to deliver payment of the Settlement Payment Amount to the Litigation Administrator by the deadline of ████████████████████████, as set forth in the Settlement Agreement, constituting a breach of the Settlement Agreement. Defendant satisfied payment in part with a setoff of ████, leaving ████████ outstanding.

44. The Litigation Administrator has engaged in multiple communications notifying Defendant of Defendant's breach of the Settlement Agreement and exhorting Defendant to cure Defendant's breach.

45. Additionally, on October 29, 2024, the Court, through the Settlement Enforcement Order, ordered Defendant to cure Defendant's breach of the Settlement Agreement by November 29, 2024.

46. As of the date of this Complaint, the Litigation Administrator has not received the Settlement Payment Amount of ████████ that Defendant agreed to remit to the Litigation

Administrator pursuant to the Settlement Agreement, in breach of Defendant's commitments under the Settlement Agreement.

## COUNT TWO

### Attorney's Fees and Costs

47. Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

48. Defendants' breach forced Plaintiff to retain the undersigned legal counsel to prosecute this action.

49. Under section 7 of the Settlement Agreement, Defendant agreed that, in the event of Defendant's breach of the Settlement Agreement, Plaintiff would be entitled to recover his reasonable attorneys' fees, expenses, and costs incurred in connection with the filing and prosecution of the claims outlined in this Complaint against Defendant.

50. Plaintiff therefore seeks judgment in its favor and against Defendant in the amount to be determined by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendant as follows:

(a) Awarding Plaintiff damages against the Defendant in the amount of not less than ███████;

(b) Awarding pre-judgment interest at the maximum legal rate running from the date of Plaintiff's first demand to Defendant to remit the Settlement Payment Amount to the date of judgment with respect to this Complaint (the "**Judgment**");

(c) Awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full;

(d) Awarding Plaintiff costs of suit incurred herein, including, without limitation, attorneys' fees, costs, and other expenses incurred in this action and any appeals arising from this

14

action to the fullest extent allowed by applicable law, since Plaintiff is being forced to litigate this Settlement Agreement due to Defendant's breach;

(e) Requiring Defendant to pay forthwith the amount of the Judgment;

(f) In the alternative, granting Plaintiff equitable tolling of the statute of limitations and the right to pursue all applicable Avoidance Actions against Defendant; and

(g) Ordering such other and further relief as the Court may deem just and proper.

*[Remainder of page intentionally left blank.]*

Dated: January 31, 2025
New York, New York

By: /s/ *Samuel P. Hershey*

**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com
jweedman@whitecase.com
lucas.curtis@whitecase.com
nikita.ash@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
laura.baccash@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  kwofford@whitecase.com
devin.rivero@whitecase.com

*Co-Counsel to Mohsin Y. Meghji,*
*Litigation Administrator, as*
*Representative for the Post-Effective*
*Date Debtors*

16

# EXHIBIT A

# Electronic ballot Summary

Date Filed: 05/26/2024
Ballot No: 1280

---

**Debtor**
Celsius Network LLC, et al.
22-10964

**District**
Southern District of New York

---

**Creditor**
STEVEN CALANDRA

**Address Change**
No

**New Address**
-

**Plan**
Preference Settlement Agreement

**Class**
WPE Settlement Agreement

---

**ballot Election**
Settling Party Signature
**Response:** YES

---

**Noticing Parties**

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").

F.      The Settling Party has a Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

G.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

I.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Effectiveness; Payment</u>. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**").  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███ █████████████████████████████████████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[2] or ETH[3] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the

---

[1]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[3]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that

3"

is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.  Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.  Settling Party's Release. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[4] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party or

---

[4]   "Related Parties" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

4"

its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.    Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

5"

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein.  Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    Representations and Warranties by Parties. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or

6"

duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties.  Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement.  Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

7"

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

8"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ STEVEN CALANDRA

Date Completed: 05/26/2024 2:36:48 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| YES |
| --- |

9"